1
2
3
4
5
6

# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

7   **GARY SCOTT, individually and on**          Case No.:
8   **behalf of all similarly situated;**
                                                 **CLASS ACTION COMPLAINT**
9              Plaintiffs,

10        vs.

11   **CITY OF PAYETTE,** an Idaho
     municipal corporation;

12             Defendant.

13   Plaintiff **GARY SCOTT,** through attorney of record **ADAM P. KARP** of
14
15   **ANIMAL LAW OFFICES,** alleges:

16                  **I. JURISDICTION AND VENUE**

17        1.      This Court has jurisdiction over the subject matter of this action
18
19   pursuant to 28 U.S.C. §§ 1331, 2201, and 2202; and venue is properly set in the
20   United States District Court for the District of Idaho pursuant to 28 U.S.C. § 1391.

21        2.      The causes of action arise from factual allegations occurring in this
22
23   judicial district.
24
25

**CLASS ACTION COMPLAINT** -  1

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 425 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com

3.      Plaintiff **GARY SCOTT** ("Scott") resides in the City of Payette. He brings this Class Action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated persons.

4.      Defendant **CITY OF PAYETTE** ("City") is a municipal corporation, organized under the laws of the State of Idaho, including for purposes of liability under 42 U.S.C. § 1983.

5.      As a result of Defendant's actions, Scott and other Class members have suffered or will suffer irreparable economic and noneconomic damage, irreversible and adverse declarative and injunctive harm, including violation of their constitutional rights.

6.      Plaintiffs' claims for attorney's fees and costs is authorized by, *inter alia*, 42 U.S.C. § 1988 and Idaho Code § 12-117.

7.      This court has personal jurisdiction over the Defendant.

## II. INTRODUCTION

8.      Since the City enacted the breed-specific components of Chapter 6.08 of the Payette Municipal Code ("PMC"), and even since its amendments by Ordinance 1400 (signed by Mayor Jeffrey T. Williams on January 5, 2016) and Ordinance 1402 (signed by Mayor Williams on August 1, 2016), on information and belief, it has denied owners of dogs their constitutional rights as described below. Those owners' dogs may have been adversely declared "pit bull dog,"

**CLASS ACTION COMPLAINT** - 2

Animal Law Offices of
**Adam P. Karp, Esq.**
114 W. Magnolia St., Ste. 425 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com

"vicious dog," "vicious dog service animal," "prohibited breed," or "prohibited breed service dog," subjected to onerous restraints, banished, confiscated, or killed. Those dogs' owners may have been criminally prosecuted for keeping a "pit bull dog," "vicious dog," or "prohibited breed." Because of the recent change in nomenclature with Ordinances 1400 and 1402, this action seeks to rectify the discrimination and mistreatment of those whose dogs were maligned under the earlier versions. Hence, when the terms "prohibited breed" or "prohibited breed service animal" are used, Plaintiffs intend to reach the City's conduct relative to "pit bull dogs," "vicious dogs," and "vicious dog service animals" as well.

## III. CLASS ACTION ALLEGATION

9.      Scott brings this suit as a class action pursuant to Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and a Plaintiff Class (the "Class") comprised of—(a) all persons whose dogs have been deemed "prohibited breed" or "prohibited breed service animal" within the City, whether or not  banished, killed, or besaddled with onerous restraints; (b) all persons who own, possess, keep, exercise control over, maintain, harbor, or transport dogs who might meet the definition of "prohibited breed" or "prohibited breed service animal" within the City based on nonbehavioral factors; (c) all persons who may wish to acquire a dog the City contend is a "prohibited breed" or "prohibited breed service animal" for nonbehavioral reasons and who might be

**CLASS ACTION COMPLAINT** - 3

subject to adverse classification and whose owner may be subject to prosecution; (d) all persons who may wish to move to, domicile in, or transact business within the City in the company of a dog whom the City may deem "prohibited breed" or "prohibited breed service animals"; (e) all persons who have been criminally charged, prosecuted, convicted, and/or sentenced for harboring a "prohibited breed" or "prohibited breed service animal" (or prior, similar label under the Code) within the City based on nonbehavioral factors; and (f) all persons who have removed their dogs from the City for fear of criminal prosecution—due to the City's vague, otherwise unconstitutional, and unlawful ordinances as described below. Scott reserves the right to modify this class definition prior to moving for class certification.

10.     This action has been brought and may be properly maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

a.      The Class is ascertainable, and there is a well-defined community of interest among the members of the Class;

b.      Membership in the Class is so numerous as to make it impractical to bring all Class members before the Court. The identity and exact number of Class members is unknown but is estimated to be at least in the dozens, if not hundreds, considering the fact that several Class members may have decided not to relocate

**CLASS ACTION COMPLAINT** - 4

their residence or business to the City, or have relocated their dogs out of fear of prosecution, confiscation, and euthanasia, due to the unconstitutional code discussed herein; and given the duration of the laws' implementation since date of enactment.

      c.    Scott's claims are typical of those of other Class members, all of whom have suffered harm due to Defendants' uniform course of conduct.

      d.    Scott is a member of the Class.

      e.    The Party opposing the Class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief and corresponding declaratory relief is appropriate respecting the class as a whole, pursuant to Rule 23(b)(2).

      f.    There are numerous and substantial questions of law and fact common to all of the members of the Class that control this litigation and predominate over any individual issues pursuant to Rule 23(b)(3). The common issues include, but are not limited to, the following:

      1.    Does the City of Payette's definition of "prohibited breed" violate the state and federal constitutions, Americans with Disabilities Act, and/or Fair Housing Act, in the respects articulated herein?

      2.    Does the City of Payette's definition of "prohibited breed service animal" violate the state and federal constitutions, Americans with

**CLASS ACTION COMPLAINT** - 5

Disabilities Act, and/or Fair Housing Act, in the respects articulated herein?

3. Does the City of Payette unlawfully threaten criminal prosecution, impoundment, confiscation, and euthanasia premised on nonbehavioral designations of dogs as "prohibited breed" or "prohibited breed service animal"?

4. Were Scott and other Class members damaged?

g.   These and other questions of law or fact which are common to the members of the Class predominate over any questions affecting only individual members of the Class;

h.   Scott will fairly and adequately protect the interests of the Class in that he has no interests antagonistic to other members of the Class and has retained counsel competent in the prosecution of class actions of this injunctive and declaratory nature so as to represent them and the Class;

i.   Without a class action, the Class will continue to suffer damage, Defendant's violations of the law or laws will continue without remedy, and Defendant will continue to enjoy the fruits and proceeds of its unlawful misconduct;

j.   Given (i) the substantive complexity of this litigation; (ii) the size of individual Class members' claims; and (iii) the limited resources of the Class

**CLASS ACTION COMPLAINT** - 6

members, few, if any, Class members could afford to seek legal redress individually for the wrongs Defendants have committed against them;

k.      This action will foster an orderly and expeditious administration of Class claims, economies of time, effort and expense, and uniformity of decision;

l.      Inferences and presumptions of materiality and reliance are available to obtain class-wide determinations of those elements within the Class claims, as are accepted methodologies for class-wide proof of declaratory and injunctive harm; alternatively, upon adjudication of Defendant's common liability, the Court can efficiently determine the claims of the individual Class members;

m.      This action presents no difficulty that would impede the Court's management of it as a class action, and a class action is the best (if not the only) available means by which members of the Class can seek legal redress for the harm caused them by Defendant.

n.      In the absence of a class action, Defendant would be unjustly enriched because it would be able to retain the benefits and fruits of its wrongful conduct.

o.      The Claims in this case are also properly certifiable under applicable law.

## IV. GENERAL ALLEGATIONS - SCOTT

11.      Scott resides at 1111 Center in Payette, Id., which has a secure, 6' wood construction perimeter fence enclosing the backyard.

**CLASS ACTION COMPLAINT** - 7

12.     Though no written pedigree or kennel club registration exists to prove his heritage, and while he has not independently verified breed composition, when Scott bought his now approximately two year old assistance dog Buddy, the seller claimed he was a "pit bull."

13.     Scott weighs about 260 pounds, has severe arthritis and tendonitis and suffers from seriously worn kneecaps, impacting his mobility. He also suffers from sciatica, bone spurs, and degenerative disc disease. Further, he has depression and PTSD, for which Buddy has been prescribed as an emotional support animal.

14.     Buddy has been individually trained to perform tasks and functions to ameliorate Scott's physical disabilities. Buddy helps keep Scott mobile, walking with tension to increase Scott's pace. Buddy also carries Scott's water bottle. Scott can command Buddy when to pull, when to slow down, and when to stop.

15.     Buddy is a "service animal" for purposes of the Americans with Disabilities Act.

16.     Buddy is a "service animal" and "emotional support animal" for purposes of the Federal Fair Housing Act.

17.     Scott has a qualifying disability for purposes of the Americans with Disabilities Act.

18.     Scott has a qualifying handicap for purposes of the Federal Fair Housing Act.

**CLASS ACTION COMPLAINT** - 8

19.     Buddy has never shown aggression toward any person or animal, never been cited for an animal control violation. Rather, he possesses a goodly and well-trained nature. To Scott's knowledge, none has complained about Buddy to the City.

20.     On May 13, 2016, before the City enacted Ordinance 1402 but after it enacted Ordinance 1400, Scott's attorney Adam P. Karp contacted City Attorney Bert Osborn by fax and email, as attached. In that letter, in an effort to seek assurances that no harm would come to Scott or Buddy, and in an effort to provide direction for Scott, Karp asked Osborn of the City's intentions: would it (a) banish Buddy; (b) allow him to be licensed as a nonvicious adult, intact dog; or (c) allow him to be licensed as a vicious dog service animal (mindful that Scott disputed Buddy was at all "vicious")?

21.     In or after June 2016, Osborn responded that the City would require him to be licensed as a vicious dog service animal.

22.     Under protest, Scott applied with the City to keep Buddy as a vicious dog service animal.

23.     The City demanded that Scott provide proof of neuter, proof of liability insurance, and access to his property so a building inspector and police officer could examine whether he had a dog kennel.

24.     Scott refuses to comply with such discriminatory requirements in

**CLASS ACTION COMPLAINT** - 9

Animal Law Offices of
Adam P. Karp, Esq.
114 W. Magnolia St., Ste. 425 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com

order to keep Buddy without threat of prosecution, confiscation, or euthanasia.

## VI. CITY OF PAYETTE'S BREED-DISCRIMINATORY CODE

25.     PMC 6.08.060(C)(4) deems as a public nuisance any dog meeting the definition of "prohibited breed" under PMC 6.08.010(PROHIBITED BREED), stating that such dogs represent "a threat to the health, safety and welfare of the public in all areas of the City, due to the inherent breed characteristics of exceptional aggression, athleticism, strength, viciousness, unpredictability and tenaciousness, such that dogs have the ability to rapidly and unpredictably inflict significant damage upon their victims." Nuisance dogs may not be kept or harbored in the City.

26.     PMC 6.08.010(PROHIBITED BREED) deems as "prohibited breed" any dog who is a "pit bull dog," Canary Dog, Dogo Argentina, American Bulldog, Cane Corso, or a dog which has sufficient characteristics as to be identifiable as partially of one of those breeds as determined by the dog owner or a qualified animal control officer, zoologist or veterinarian, mindful that a prima facie case is established when a qualified animal control officer, zoologist or veterinarian makes or provides a sworn statement that a particular dog exhibits distinguishing physical characteristics of one of the "prohibited" breeds.

27.     "Pit bull dog" is defined at PMC 6.08.010(PIT BULL DOG) as "Any pit bull terrier." "Pit bull terrier" is defined as an American pit bull terrier

CLASS ACTION COMPLAINT - 10

("APBT"), American bulldog, American Staffordshire terrier ("AST"), Staffordshire bull terrier ("SBT"), English pit bull ("EPB"), English Staffordshire terrier ("EST") or any breed of dog or any mixed breed of dog which contains as an element of its breeding the breeds of APBT, American bulldog, AST, SBT, EPB, or EST, or having appearance and characteristics so as to be identifiable as partially of one or more of such breeds.

28.    The EPB and EST are not breeds recognized by the American Kennel Club ("AKC") or United Kennel Club ("UKC"). The APBT is not recognized as a breed by the AKC.

29.    "American bulldog" is defined at PMC 6.08.010(AMERICAN BULLDOG) as any dog having the characteristics of the breed known by said name or any mixed breed of dog which contains, as an element of its breeding, the breed of American Bulldog as to be identifiable as partially of such breed.

30.    The American bulldog are not breeds recognized by the AKC.

31.    "Canary dog" is defined at PMC 6.08.010(CANARY DOG) as any Canary Dog or Perro de Presa Canario, or any mixed breed of dog which contains, as an element of its breeding, the breed of Canary Dog or Perro de Presa Canario as to be identifiable as partially of such breed.

32.    "Cane Corso" is defined at PMC 6.08.010(CANE CORSO) as any dog having the characteristics of the breed known by said name or any mixed

**CLASS ACTION COMPLAINT** - 11

breed of dog which contains, as an element of its breeding, the breed of Cane Corso as to be identifiable as partially of such breed.

33.     "Dogo Argentina" is defined at PMC 6.08.010(DOGO ARGENTINA) as any dog having the characteristics of the breed known by said name or any mixed breed of dog which contains, as an element of its breeding, the breed of Dogo Argentina as to be identifiable as partially of such breed.

34.     "Wolf-hybrid" is defined at PMC 6.08.010(WOLF-HYBRID) as an animal which is the progeny of a dog (canis familiaris) and a wolf (canis lupus or canis rufus). Wolf-hybrid also means an animal which is advertised, registered, licensed or otherwise described or represented as a wolf-hybrid by its owner or keeper or an animal which exhibits primary physical and behavioral wolf characteristics.

35.     The AKC and UKC do not recognize wolf-hybrid or wolf as a breed.

36.     Nothing in Ch. 6.08 PMC sets forth the standards, characteristics, or appearances by which a dog may be reasonably determined to be one of the "prohibited breeds." It does not reference any kennel club breed standards or authoritative, objective sources.

37.     Owners of dogs deemed nuisances may appeal any order or decision of the Ordinance Officer within ten days after written receipt of notice. Such hearing takes place before the Chief of Police, who must issue a written decision

**CLASS ACTION COMPLAINT** -  12

without any deadline set by code. That decision may be appealed within fifteen days of entry to the City Council, per PMC 6.08.107.

38.     Nothing in Ch. 6.08 PMC provides for the standard or burden of proof at the hearing before the Chief of Police or City Council, what rules of evidence apply, or for the issuance of a subpoena to obtain records and command appearance of witnesses for cross-examination.

39.     Nothing in Ch. 6.08 PMC provides that written notice must be given to the owner of a dog deemed a nuisance as a prohibited breed as to the right to appeal and the procedure by which an appeal may occur, except in the narrow case of impoundment of prohibited breed dogs per PMC 6.08.101(A), which only pertains to *redemption,* not *contesting* the enforcement action.

40.     PMC 6.08.100(A) makes it unlawful to keep, harbor, own, sell, offer to sell, or in any way possess a "prohibited breed" within the City. Violation is a misdemeanor. Proof of a prior violation "shall not require proof that the same prohibited breed dog is involved."

41.     Prohibited breed service animals are exempt from PMC 6.08.100(A) provided that a prohibited breed service animal license is obtained, as described in PMC 6.08.100(C)(1) and (C)(1)(d). To license a prohibited breed service animal requires compliance with the following conditions of PMC 6.08.100(C)(2): (a) proof of current rabies vaccination; (b) two color photographs of the registered

**CLASS ACTION COMPLAINT** - 13

ANIMAL LAW OFFICES OF
**ADAM P. KARP, ESQ.**
114 W. Magnolia St., Ste. 425 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com

animal clearly showing color and approximate size; (c) the owner or handler must be at least 18; (d) the tasks the dog has been trained to perform must be listed on the licensing application; (e) mandatory spay/neuter with documentary proof of sterilization; (f) microchip implantation with number given to the City, including immediate notification of change of address; (g) surety bond or liability insurance of at least $25,000 with mandatory notification by the carrier of the City within 30 days before any cancellation, termination, or expiration of the policy; (h) wearing a license tag on the dog's collar or harness at all times; (i) confinement whenever outdoors in a locked, secure pen or enclosure, or in the rear yard enclosed by a six foot fence; (j) muzzling and in a secure temporary enclosure or securely leashed (no longer than 4') whenever away from the owner's property (subject to modification if the leash or muzzle interferes with safe, effective performance of the tasks performed by the dog); (k) prohibition on sale or transfer to any person residing in the City; (l) immediate notification of chief of police or designee if the dog is loose, stolen, at large, unconfined, has mauled, bitten, attacked, threatened, or in any way menaced another animal or human, or died; (m) denial of breeder's permit; (n) revocation of license, impoundment and disposition per PMC 6.08.100(C)(3) if the dog is a direct threat to the health or safety of others; (o) noncompliance with any of (a) through (n) shall result in license revocation, impoundment and disposition per PMC 6.08.100(C)(3).

**CLASS ACTION COMPLAINT** - 14

Animal Law Offices of
Adam P. Karp, Esq.
114 W. Magnolia St., Ste. 425 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com

42.    PMC 6.08.100(C)(3) provides for immediate impoundment of a prohibited breed service animal found within the City who does not meet the exceptions stated in PMC 6.08.100. If the dog is not found to be a pit bull by DNA testing, evidence to be obtained at the owner's option and sole expense, or if the dog is deemed a service animal, the dog shall be released to the owner, subject to full compliance with "every requirement of this chapter."

43.    "DNA Test Evidence" is defined at PMC 6.08.010(DNA TEST EVIDENCE) as a test that looks for genetic markers of the "following breeds: pit bull dog, Canary dog, Dogo Argentina, American bulldog, Cane Corso, or wolf hybrid." To be considered a "prohibited breed," the DNA testing must demonstrate a genetic blueprint containing any element of the prohibited breed. The DNA test results shall constitute evidence which the court may consider in establishing that a dog is other than a breed banned by this chapter. DNA testing results shall override any subjective evidence including observational findings to the contrary.

44.    The Mars Wisdom Panel 4.0 DNA test, with the broadest breed library on the market presently, does not test for the APBT, EPB, or EST.

45.    "Secure pen or enclosure" is defined at PMC 6.08.010(SECURE PEN OR ENCLOSURE) as a "six (6) sided structure designed to prevent entry of a child or escape of a vicious dog or prohibited breed service animal." It must have minimum dimensions of five feet by ten feet per animal housed within with secure

CLASS ACTION COMPLAINT - 15

chain-link sides, a secured top and a secure bottom. If no bottom exists, the sides must be embedded in the ground no less than two feet.

46.    "Prohibited    breed    service    animal"    is    defined    at    PMC 6.08.010(PROHIBITED BREED SERVICE ANIMAL) as a "prohibited breed" under PMC 6.08.010(PROHIBITED BREED) who "also qualifies as a service animal in accord with the American disabilities act requirements."

47.    No part of Ch. 6.08 PMC defines the "Americans disabilities act requirements" or identifies by citation the "Americans disabilities act."

## X. CITY OF PAYETTE'S PROCEDURAL AND SUBSTANTIVE INFIRMITIES

48.    The state of science in 2016, including AKC and UKC standards themselves, renders purebred bans, forfeitures, and related criminal charges, such as threatened by the City's prohibited breed code, not rationally related to any legitimate government purpose and certainly not the least restrictive means available to manage dogs proven harmful by prior misbehavior. Such purebred ban violates substantive due process rights under the United States and Idaho Constitutions.

49.    The City code fails to publicize the City's precise qualitative or quantitative methodologies or guidelines for determining whether a particular dog has "sufficient" characteristics to be deemed a "prohibited breed" or for

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 425 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com

determining whether a particular dog "contains as an element of its breeding" one of the prohibited breeds so as to be identifiable as partially of such breed. Further, it fails to identify which characteristics are deemed distinguishing; what constitutes an "element"; what quantum is "partially"; what characteristics are "identifiable"; how many characteristics make a dog "identifiable"; how must such identification be made (e.g., visual, DNA, other); what makes an animal control officer, zoologist, or veterinarian "qualified"; what quality or quantity of evidence proves same; and how that evidence may be reliably taken pursuant to Idaho Rule of Evidence 702.

50.     The City code's "prohibited breed" definition (and individual breed definitions contained therein) fails to quantify what genetic increment constitutes same, and fails to provide fair warning of those circumstances where genetics manifest physically to an ascertainable and sufficient phenotypic degree. Instead, it determines prohibited conduct according to the often-uneducated eye of the regulator, rendering it unconstitutionally vague, overbroad, and underbroad, violating equal protection and privileges & immunities clauses, and denying citizens procedural due process under federal and state constitutional law.

51.     No ascertainable (much less authoritative) source exists for mixed breed standards to which a government official may refer to avoid exercising unbridled, highly subjective discretion in "identifying" a dog as wholly or partially

CLASS ACTION COMPLAINT - 17

Animal Law Offices of
Adam P. Karp, Esq.
114 W. Magnolia St., Ste. 425 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com

of the prohibited breeds, rendering the statute unconstitutionally vague, overbroad, and underbroad, violating equal protection and privileges & immunities clauses, and lacking procedural due process under federal and state constitutional law.

52.     By granting three classes of individuals the authority to make a prima facie case of breed identification – viz., "qualified animal control officer, zoologist or veterinarian," the City has delegated to private persons, over whom the City has no control the right to amend, modify, and revoke the statutory law of the City, and gives such individuals the power to frame and adopt a code which becomes a law carrying penal and forfeiture sanctions, violating the nondelegation doctrine of Idaho Const. Art. II, § 1 and corollary federal constitutional law.

53.     With respect to prohibited breed service animals, the City has prioritized DNA test evidence over any other form of breed identification, going so far as to state that it "shall override any subjective evidence including observational findings to the contrary." The most common DNA test used to ascertain breed, for *medical purposes only,* is the Mars Wisdom Panel. The company has expressly disclaimed the use of its test for animal control/regulatory purposes.    See    www.wisdompanel.com/service/faq    and www.wisdompanel.com/about_wp/terms_and_conditions/.   Thus, the City has delegated to a private corporation, over which it has no control the right to amend, modify, and revoke the statutory law of the City, and gives such private

CLASS ACTION COMPLAINT - 18

corporation the power to frame and adopt a code which becomes a law carrying penal and forfeiture sanctions, violating the nondelegation doctrine of Idaho Const. Art. II, § 1.

54.     Nothing in the City code indicates that the hearing before the police chief, his designee, or the City Council is transcribed by a court reporter or otherwise recorded so that a verbatim report of proceedings can be generated, thereby thwarting meaningful appellate review.

55.     Ch. 6.08 PMC does not provide for the issuance of *subpoenae duces tecum* or *subpoenae ad testificandum* (whether for deposition or hearing), restricting the dog owner of the ability to meaningfully cross-examine, obtain exculpatory evidence, call witnesses, confront one's accusers, and fully defend.

56.     Ch. 6.08 PMC does not set forth a burden or standard of proof.

57.     Hence, Ch. 6.08 PMC, relative to impoundment, declaring a dog a nuisance, denying or revoking a prohibited breed service animal license, or declaring a dog a prohibited breed, systemically threatens and disrespects, *inter alia*, the Fourth and Fourteenth Amendments to the United States Constitution and Arts. I, 13 and 17, and Art. II, § 1 of the Idaho Constitution.

58.     The penalties imposed against dogs declared "prohibited breed" based solely on breed and not behavior, when those canines have no demonstrated history or any allegation of aggression toward animals or humans, but who only face these

**CLASS ACTION COMPLAINT** - 19

restrictions (i.e., banishment or death) due to a perceived, imprecise, and methodologically deficient based on inaccurate visual identification, violate substantive due process.

59.     Ch. 6.08 PMC systematically violates the rights of those with emotional support animals of a "prohibited breed" under the Federal Fair Housing Act by only purporting to make exception for prohibited breed *service animals*.

## XII. CLAIMS FOR RELIEF AGAINST CITY OF PAYETTE

60.     All allegations above are incorporated by reference and reasserted as to claims below.

61.     **FIRST CLAIM** – **Retrospective and Prospective Injunctive Relief for Ongoing Violation of Federally-Protected Constitutional and Statutory Rights (28 U.S.C. §§ 2201-2202, 42 U.S.C. § 1983, 42 U.S.C. § 12101 et seq., 42 U.S.C. § 3601 et seq.)** to vacate all prior designations of Class Members' dogs as "prohibited breed" or "prohibited breed service animal" (or precursor definitions) based on nonbehavioral factors (such as purported breed or morphology); to strike those portions of the Payette Municipal Code discussed herein as unconstitutional under the State and Federal Constitutions and/or in violation of the Americans with Disabilities Act and Fair Housing Act and a nullity; to enjoin the City from enforcing the breed-specific aspects of the Code, and from enacting breed-specific prohibitions for the reasons given herein. This claim specifically pertains to, but is

**CLASS ACTION COMPLAINT** - 20

not limited to, Buddy.

62.     **SECOND CLAIM** – **Final Retrospective and Prospective Declaratory Judgment for Ongoing Violation of Federally-Protected Constitutional and Statutory Rights (28 U.S.C. §§ 2201-2202, 42 U.S.C. § 1983)** finding various parts of Ch. 6.08 PMC, as described above, unconstitutional under the State and Federal Constitutions and/or in violation of the Americans with Disabilities Act and Fair Housing Act with respect to both mixed-breed and purebred dogs; and voiding *ab initio* any determination (and related penalties or restraints based thereon) that any Class Member's dog is a "prohibited breed" or "prohibited breed service animal" (or precursor terminology) based on nonbehavioral factors (such as purported breed or morphology) under the City code. This claim specifically pertains to, but is not limited to, Buddy.

63.     **THIRD CLAIM** – **Violation of Title II of the Americans with Disabilities Act and Implementing Regulations (42 U.S.C. § 12101, et seq., as amended, and 28 CFR Part 35)** in excluding from participation in, denying the benefits of services, programs, and activities of the City, and/or subjecting to discrimination by the City disabled individuals based on the breed of their service animals, viz., disparate licensing and registration scheme and related conditions (see 42 USC § 12132).

64.     **FOURTH CLAIM** – **Violation of Federal Fair Housing Act and**

CLASS ACTION COMPLAINT - 21

**Implementing Regulations (42 U.S.C. § 3601, et seq., as amended, and 24 CFR Part 100)** in discriminating against disabled individuals by imposing onerous and invasive conditions on their keeping emotional support animals based solely on their breed, thereby denying an equal opportunity to enjoy their dwelling, and by failing make reasonable accommodations for those with emotional support animals of a "prohibited breed" by disallowing them the right to license, keep, own, and possess such animals (even as a "prohibited breed service animal") within City limits like any other dog.

## PRAYER

WHEREFORE, Scott and Class pray for judgment against Defendant as follows:

A. Certification of the action as a class action pursuant to Rule 23(b)(1), (2), and/or (3) of the Federal Rules of Civil Procedure, and appointment of Scott as Class Representative and his counsel of record as Class Counsel;

B. For declaratory and injunctive relief as stated;

C. For costs of suit;

D. For reasonable attorney's fees and other litigation-related costs as allowed by law under 42 U.S.C. § 1988, the ADA and/or the FHA, or as otherwise provided by law or equity, or in the alternative, statutory attorney's fees; and

E. For such other and further relief as the Court may deem just and proper.

**CLASS ACTION COMPLAINT** - 22

Dated this December 8, 2016.

ANIMAL LAW OFFICES

*/s/ Adam P. Karp*

_____

Adam P. Karp, ISBA No. 8913
Attorney for Plaintiffs Scott and Class Members
114 W. Magnolia St., Ste. 425
Bellingham, WA  98225
(888) 430-0001
adam@animal-lawyer.com

**CLASS ACTION COMPLAINT** -  23



# ANIMAL LAW OFFICES
## OF ADAM P. KARP, JD, MS

114 W. Magnolia Street, Suite 425
Bellingham, Washington 98225

**Bellingham:** (360) 738-7273
**Outside Bellingham:** (888) 430-0001
**E-Fax:** (866) 652-3832
**Email:** adam@animal-lawyer.com
**Web:** www.animal-lawyer.com
*Licensed in Washington, Oregon, and Idaho*

**By Fax and Email**

Friday, May 13, 2016

Bert L. Osborn, Chtd.
26 S. 9th St.
Payette, ID  83661-0158
(208) 642-4458
F: (208) 642-4981
blosborn@qwestoffice.net

**RE:** *Licensing of Buddy Scott*

Dear Mr. Osborn,

I represent Gary Scott of 1111 Center, Payette, Id. and his assistance dog Buddy. This letter seeks direction from the City as to whether it will allow Buddy to enter and remain within the city limits of Payette. Photos of Buddy are shown below. Though no written pedigree or kennel club registration exists to prove his heritage, and while he has not independently verified breed composition, when Mr. Scott purchased him, the seller claimed he was a "pit bull." Mr. Scott weighs about 260 pounds, has severe arthritis and tendonitis and suffers from seriously worn kneecaps, impacting his mobility. He also has sciatica, bone spurs, and degenerative disc disease with several surgeries anticipated in the near future. In addition to these physical disabilities, Mr. Scott has depression and PTSD, for which his health care provider has prescribed Buddy as an emotional support animal. Buddy helps keep him mobile, walking with tension (think weight-pulling) to increase Mr. Scott's pace.[1] Buddy also carries his water bottle.

---

[1] Buddy's pulling Mr. Scott is not a function of being untrained (as some dogs tug at the leash because they do not know how to heel). Rather, Mr. Scott can command Buddy when to pull, when to slow down, and when to stop.



As discussed in my letter to you dated Mar. 27, 2015, the City has breed-discriminatory legislation. While Ord. 1400 (2015) changed Ch. 6.08 PMC in many respects, it still deems all "pit bulls" as "vicious dogs" and bans those not licensed as same before 2006 (see PMC 6.08.070(N)(5). It does, however, make an exception for vicious dog service animals. Yet, the definition of "service animal" is based on unpublished standards of a third party, non-governmental entity Animals of America. PMC 6.08.010(VICIOUS DOG SERVICE ANIMAL) is also confusing, for it is unclear if it treats *service* and *therapy* animals as interchangeable or distinct. Regardless, I have no doubt that Buddy qualifies as a service dog under the ADA and as an emotional support animal under the FHA.

To be clear, Mr. Scott wishes to license Buddy. The question is whether the City will (a) banish Buddy; (b) allow him to be licensed as a nonvicious adult, intact dog; (c) or allow him to be licensed as a vicious dog service animal, all while requiring compliance with PMC 6.08.070(N)(6)(a-e). Note that Mr. Scott takes the position that, regardless of his breed, Buddy should not be declared "vicious," whether of the service animal variety or not.

Please respond to this request no later than next **Tues., May 17, 2016**. If I do not hear from you, I will assume that the City intends to enforce those unconstitutional and unlawful breed-specific parts of Ch. 6.08 PMC against Mr. Scott and his dog.

Respectfully,

ANIMAL LAW OFFICES


Adam P. Karp, Esq.
CC: Gary Scott